## LUCY A. SMILEY *vs.* IRA ALLEN.[*]

It is the duty of a coroner, who finds personal property upon the dead body of a person killed by an accident and rightfully takes possession thereof, to deliver the same to the true owner on reasonable demand and proof of ownership; and, if he refuses to do so upon the sole ground that it is his duty as coroner to deliver the same to the administrator of the estate of the deceased person, an action of replevin may be maintained against him therefor.

REPLEVIN of a gold watch and chain and sundry articles of jewelry. The writ was dated November 10th 1864.

At the trial in the superior court, before *Ames,* J., it appeared that Francis Frye, in October 1864, was struck by the engine attached to a railroad train in West Roxbury, and was killed. The defendant, as a coroner of the county, caused an inquest to be duly held, and thereafter took charge of the articles described in the writ, all of which were found upon the person of the deceased. The plaintiff, who at first represented herself to be the wife of said Frye, claimed the property as her own, and demanded it of the defendant, before bringing this action. The defendant did not comply with the demand, but insisted that it

---

[*] This case was argued with the Norfolk cases, in October 1866.

was his duty to deliver it to the administrator of the estate of said Frye, when appointed; and it appeared that one Shepherd was appointed such administrator on the 7th of November 1864, and claimed and still claims that the property belongs to him in that capacity. It was not claimed that the articles came wrongfully to the hands of said Frye, but the plaintiff insisted that she delivered them to him, and permitted him to use and wear them as a favor and an act of friendship and kindness to him, without any stipulation as to the length of time that such use should continue, as a gratuitous bailment. And it appeared that he had usually worn said articles and carried them on his person for four or five years, and to the day of his death.

The defendant then contended that if the articles were ever the property of the plaintiff, (which he denied,) yet, under the circumstances of the case, she would not be entitled to maintain this action.

The judge ruled that, assuming the plaintiff's account of the transaction to be true as above set forth, it was the duty of the defendant, as a coroner, to take charge of the personal property of the deceased found upon the body, including such articles of personal wear as were apparently or presumably his property, and including also such things as were intrusted to him, or in which he had a qualified or special property or right of possession as bailee; and that it was also his duty and his right to retain such articles in his possession, to deliver to the administrator of the estate of the deceased, if one should be appointed within sixty days, who should claim them, or to the public administrator, if no such appointment should be made; and that under Gen. Sts. *c.* 175, § 17, the defendant would not be liable, under the circumstances of the case, in the present action, but that the plaintiff must seek her remedy against the administrator.

The jury thereupon, by direction of the judge, returned a verdict for the defendant. The plaintiff alleged exceptions.

*J. W. May,* for the plaintiff.

*T. Wentworth,* for the defendant. An administrator of the estate of the deceased had been appointed before the commencement of this action, and the coroner simply wished to hand over

the property to him. The law placed the property in the hands of the coroner, in the first instance. May he not protect himself by delivering it to the administrator? In taking inquests, a coroner exercises judicial powers, and cannot act by deputy. Gen. Sts. *c.* 175, §§ 2, 5, 10, 11. 1 Burn's Just. 927. Wood's Inst. book 4, *c.* 1, § 19. *The King* v. *Ferrand*, 3 B. & Ald. 260. *Regina* v. *Taylor*, 9 C. & P. 672. His court is a court of record. 4 Bl. Com. 274. 2 Hale P. C. 53. Gen. Sts. *c.* 175, § 10. *Certiorari* lies to a coroner to remove a case, and *mandamus* to compel him to execute his duty. 2 Hale P. C. 67. *In the matter of Culley*, 5 B. & Ad. 230. The supreme judicial court has general superintendence over all inferior courts. Gen. Sts. *c.* 112, § 3. It could therefore issue a *certiorari* to the coroner, or a writ of *mandamus*. It was the duty of the defendant to take an inquisition upon the death of Frye, and to take charge of all personal property found upon or near his body. Gen. Sts. *c.* 175, § 17. This property was to be disposed of by him judicially. This duty was imposed upon him by law. If he decided wrong, this court, upon proper process, could correct his decision. But no action at law lies against him for a mistake in exercising his judicial duty.

The statute gives to coroners the custody of property found upon or near dead bodies for a twofold purpose; to preserve it for the rightful owner, and to preserve it for the furtherance of public justice. Such property may be important evidence, in case of a homicide. Would the coroner in such case be liable for retaining it? It may also be claimed by several persons. Is the coroner to decide at his peril to whom it belongs, or shall he deliver it over to the administrator? The property, while in the custody of the coroner, is in the custody of the law. It is held under a decree of the court having jurisdiction of the matter. All governments make provision for property under these circumstances; assuming that it is without a lawful possessor. The true owner has a perfect remedy by bringing the case before this court. The Gen. Sts. *c.* 175, § 17, by providing that the coroner shall deliver such property forthwith to those entitled to its care or possession, carefully avoid providing that he shall deliver it to

the owner. The district attorney or a general or special admin·istrator may be entitled to the possession temporarily. No action has ever been maintained against a coroner for an act of official duty, growing out of the exercise of his power in taking an inquest. See *Garnett* v. *Ferrand,* 6 B. & C. 611; *S. C.* 9 D. & R. 657.

BIGELOW, C. J. Upon the undisputed facts of this case, the right of property in the articles replevied was at the time of suit brought in the plaintiff. We think it also clear that the right of possession was then in her, and that this action can be maintained.

The person deceased, on whose body they were found by the defendant, was a mere gratuitous bailee. The articles were lent to him by the plaintiff, subject to be reclaimed by her at any moment. His death did not in any way affect or change her right of property, or of immediate possession on due demand. It did make it the duty of the defendant to take charge of the property in his capacity as coroner. This is imposed on him by Gen. Sts. *c.* 175, § 17 ; but the same statute also makes it his duty to " deliver the same forthwith to those entitled to its care or possession." The administrator of the person deceased had no right or title in them, nor could he lawfully claim to retain possession of them as against the plaintiff. There was no lien on them in favor of the intestate's estate. The bailment was at an end, and the right of the plaintiff to resume possession was absolute. We know of no principle or rule of law by virtue of which an administrator can claim a right as against the owner to receive or take possession of property belonging to another person which was in the hands of his intestate at the time of his death, and which the latter would have been bound to deliver to the former at any moment on demand. Nor does the statute above cited, which imposes on a coroner the duty of taking charge of property of persons deceased, confer any such right. On the contrary, it is studiously framed so as to avoid any interference with the legal rights of parties. The possession which the coroner is authorized to take is for the immediate care and preservation of the property only, in order that it

may be forthwith delivered to those entitled to its care or possession.

But it is suggested that a coroner is a judicial officer, and that no action can be maintained against him for the exercise of any authority coming within the scope of his legitimate jurisdiction. This is a well settled rule; but it has no application to the present case. A coroner is clothed with certain judicial powers; but he is also authorized to exercise ministerial and executive duties. For error, mistake, or even misconduct in the former capacity, he is not liable to an action; but when he acts in the latter capacity, he is answerable to those who are injured by any excess or abuse of his official powers. In this respect, he stands on the same footing with sheriffs and justices of the peace. We are unable to see that the duty imposed on him by the statute, of taking possession of property found on the body of a deceased person and of delivering it forthwith to the person entitled to it, has in it any of the elements of a judicial power or authority. It is the mere performance of a prescribed act. It involves no exercise of judgment or discretion, by which the rights of any person are conclusively settled. His action is in its nature purely ministerial, like the service of a writ or the levy of an execution. An officer is required to seize the goods of the debtor; he must determine what goods he will take; if he errs and takes the property of another person he is liable therefor. So here; the coroner is bound to take charge of the property, and to deliver it to the person entitled to receive it. If he refuses unreasonably or without sufficient cause, he violates his duty and is liable therefor.

But it is said that this interpretation of the statute casts an unreasonable burden on a public officer, by requiring him to determine at his peril in whom the right of possession of the property is vested which the law requires him to take in charge. We think this argument is pressed too far by the counsel for the defendant. A coroner cannot be held liable for property taken in charge by him, until after due demand and a wrongful refusal to surrender it, equivalent to a conversion. It is rightfu'y in his possession until due demand is made therefor, and he

wrongfully refuses to give it up. He would not be liable on proof of a mere demand. If A. find the goods of B., and on demand answers that he knows not whether B. be the true owner, and therefore refuses to deliver them, this is not evidence of a conversion. *Isaack* v. *Clark*, 2 Bulst. 312. *Gunton* v. *Nurse*, 2 Brod. & Bing. 447. *Clark* v. *Chamberlain*, 2 M. & W. 78. *Solomons* v. *Dawes*, 1 Esp. 83. *Davies* v. *Vernon*, 6 Q. B. 443. If, in the present case, the defendant had, on the demand of the plaintiff for the articles in question, required reasonable proof of her title to the possession of them, his refusal to deliver them without such proof would not have rendered him liable to an action.

But the evidence in this case discloses that on demand made he denied absolutely the right of the plaintiff to the possession of the articles. He set up against her claim the right of the administrator to receive them. This was a conversion. A refusal to surrender property belonging to a party, on the ground that it belongs to another person, proves a conversion. *Caunce* v. *Spanton*, 7 Man. & Gr. 903. 2 Saund. 47 f. *Exceptions sustained.*